# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                        CRIMINAL ACTION NO. 2:09-cr-00222

DAVID KEITH BARBEITO, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court for consideration are Defendant Elmer Luke Moore's Motion to Enforce Public Trial Rights and to Dissolve Restricted Access to Documents [Docket 909], joined by Defendants Thomas E. Geer [Docket 921], Martin Craig Nuss [Docket 926], and orally by David Keith Barbeito [Docket 1416]; and Defendant Joseph Frank Cotton's Motion to Enforce Public Trial Rights and to Dissolve Restricted Access to Documents [Docket 936]. The Government filed a response in opposition [Docket 1047], and the Court heard oral argument at a pretrial motions hearing on March 15, 2010 [Docket 1416]. The matter now being fully briefed and argued, the issue is ripe for the Court's consideration.

On October 30, 2009, the Court entered a Memorandum Opinion and Protective Order pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure. (Docket 539.) Therein, the Court found that certain restrictions on the dissemination of discovery materials were "in the interests of witness security," that the restrictions would not unduly interfere with the defendants' right to meaningful communication with their counsel, and that any inconvenience caused by these

restrictions was outweighed by the very real risks presented by the free dissemination of discovery materials.  (*Id*.)

Defendants now seek dissolution of this Protective Order.  In these motions, Defendants argue that the order is no longer necessary because most of the confidential informants' names are now in the public domain, because the order creates a hardship on defendants working with their attorneys on their cases, and because it infringes on their public trial rights.  (Dockets 909, 936, Pretrial Motions Hrg.)  The Court will address each of these arguments in turn.

*1.  Continued Usefulness of the Order*

Defendants argued, both in their motions and at the March 15, 2010 hearing, that the names of the confidential informants sought to be protected by the Protective Order are now well known, both in newspapers and on the internet.  The Government responds by saying that protecting the identities of the confidential informants was not the sole basis for the Protective Order—instead, the purpose was to prevent the dissemination of papers that could be used to confirm any suspicions or rumors and later to retaliate against or threaten the informants.

Although aware of the significant speculation surrounding the identity of the various confidential informants in this case, the Court finds that the Protective Order is still useful.  As the Government points out, until the identities of the confidential informants are confirmed, they remain pure speculation.  Restricting the dissemination of certain discovery materials in this case serves to prevent those documents from becoming available and further jeopardizing the safety of these individuals.

The Court would note that it knew of the use of documents to intimidate or punish those cooperating with the Government in the initial briefing requesting a protective order.  (Docket 299

at 3-4.) No evidence has been presented to indicate that this threat has diminished. To the contrary, the Government asserts that the Pagan Motorcycle Club frequently uses documents to confirm the identities of accused "snitches" and "rats," making the dissemination of documents all the more dangerous now that their identities are suspected. Seeing no diminution in the threat to witnesses that formed the basis for the Protective Order, the Court declines to dissolve the Protective Order on this basis.

*2. Hardship on Defendants when Preparing for Trial*

Defendants next argue that the Protective Order places "a substantial burden" on Defendants, and that the contours of the Protective Order prove "not workable or feasible" with clients who are currently incarcerated (Docket 909 at 2), or who live far away (Docket 936 at 2). While there were speculations of these concerns prior to the entry of the Protective Order, all objections on that basis alone were purely theoretical. Still, the Court found that the restrictions would not harm Defendants' substantive rights to consult with their attorneys in preparing their defense. (Docket 539 at 4 ("However, any such inconvenience would not appear to rise to a level that would compromise Defendants' substantive rights.").) Morever, the Court found that "such inconvenience is outweighed by the mitigation of the dangers unfettered disclosure would present." (Docket 539 at 4.)

Now with anecdotal evidence of the burdens caused by the Protective Order, the Court remains convinced that the burdens are not so onerous as to constitute a violation of Defendants' due process rights or right to counsel. To be sure, the location of Defendants, either in jail or outside the state, undoubtedly places a higher burden on some counsel than others. However, the Court finds that the burden of additional time or money does not outweigh the risk presented to

confidential informants and other cooperating witnesses were the information allowed to be photocopied and disseminated.

The Court would note several mitigating circumstances that were considered in reaching this conclusion. First, all discovery is not considered "Restricted Access." Pursuant to paragraph 3 of the Protective Order, the Government must identify "only those discovery items that contain or reference the identity of confidential government informants." (Docket 539 at 4.) Hence, Defendants may review at least some of the discovery outside the presence of their counsel. Second, procedures are available to challenge what Defendants believe is improper characterization of discovery as "restricted access." (Docket 539 at 5.) Finally, other means may be available to combat the hardships posed by defendants who are presently incarcerated or living out of state. These concerns, however, should be addressed on an individualized basis, not by invalidating the entire Protective Order. The danger to the confidential informants and cooperating witnesses depends on only one defendant disseminating paper, and thus it is inappropriate to address individualized problems with the Protective Order restrictions by dissolving the entire order.

The Court refuses to dissolve the Protective Order on this basis.

*3. Public Trial Rights*

Finally, Defendants challenge the Protective Order arguing that it infringes on their public trial rights. The Government responded to this by asserting that all proceedings in this case have been public and that Defendants will still have a public and open trial. The Court finds no merit in Defendants' contention on this point. During the pretrial motions hearing, the Court acknowledged that the trial would be public and that much of the information presently covered by the Protective

Order would be introduced at that time. Defendants have not shown how the Protective Order interferes with their right to a public trial.

*4. Conclusion*

For the reasons stated above, Defendant Elmer Luke Moore's Motion to Enforce Public Trial rights and to Dissolve Restricted Access to Documents [Docket 909] and Defendant Joseph Frank Cotton's Motion to Enforce Public Trial Rights and to Dissolve Restricted Access to Documents [Docket 936] are **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to Defendants and counsel, and the United States Attorney.

ENTER: April 8, 2010

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE